# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **VISTA PEAK VENTURES, LLC,** § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> § <br> **JAPAN DISPLAY INC.,** § <br> § <br> Defendant. § | **C.A. NOS.** <br> **2:19-cv-00323-JRG; -00324; -00325** <br><br><br><br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT JAPAN DISPLAY INC.'S OPPOSITION TO VISTA PEAK VENTURES, LLC'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT**

Defendant Japan Display Inc. ("JDI") respectfully submits this Opposition to Plaintiff Vista Peak Ventures, LLC's ("VPV's") Motion to Compel Discovery from Defendant (the "Motion") and requests that the Court deny VPV's Motion, for the reasons demonstrated below.

## PRELIMINARY STATEMENT

VPV's pattern in these three cases, as well as the seven other campaigns VPV has filed asserting some of the same patents against other targets, is unfortunately transparent—multiply the cost of litigation by any tactic possible in order to drive the defendant to settle and avoid litigating the merits.  That is the explanation for this Motion, which otherwise is inexplicable in that it asks the Court for an order compelling production of information that VPV either already has or that JDI has already committed to producing.  The only exception is VPV's position that it should be permitted to use boiler plate catch all language to further expand the scope of discovery, a tactic this Court has repeatedly and squarely rejected.  *See* Point I, *infra.*

The reality is as follows—VPV asserts twelve patents across three actions against JDI; VPV charted only three products in its Infringement Contentions, but listed another 112 products as the Accused Products, without any meaningful attempt to even identify which products allegedly infringe which patents, much less to explain how the three charted products are representative of the balance of the 115.  *See* Ex. A (Decl. of Hilary Preston) at ¶¶ 4-7.  Nevertheless, understanding and appreciating this Court's broad approach to discovery, JDI investigated all 115 products, found that only 76 have been sold by JDI in the relevant time period, and JDI has produced substantial volumes of information regarding those 76.  *Id.* at ¶ 8-9.

While fact discovery does not close until September 28th, JDI has already produced nearly 57,000 pages of documents (including many of the technical documents VPV seeks), made available for inspection highly sensitive design layout files and layer information for each of those 76 Accused Products under the source code provisions of the Protective Order (Dkt. No. 32)

1

("Source Code Production"), answered more than 20 interrogatories, and committed to continuing to supplement its efforts as requested.  *See* Ex. A at ¶¶ 13-23, 24-26; Point IV, *infra*.  VPV's Motion demonstrates that it has not yet reviewed all those materials.

In contrast, VPV has produced only **43** documents in total, despite having stated that it "will produce" any number of documents; provided inadequate interrogatory responses merely incorporating VPV's pleadings and disclosures; and provided inadequate responses to requests for admission, which are largely contradicted by VPV's own documents and prior statements.  VPV has not yet responded to JDI's letter detailing these deficiencies, nor has it responded to JDI's request for a meet and confer.  In contrast to VPV's approach in this Motion, JDI continues its efforts to resolve these issues without taking up the Court's valuable time prematurely.  If necessary, and only after exhausting its efforts, JDI may be back to the Court to address those deficiencies.

**ARGUMENT**

**I.    JDI Has Provided Discovery On All of the Identified Accused Products that Have Been Sold During the Relevant Damages Period.**

VPV claims it is entitled to discovery on the "115 products identified by model number and all other reasonably similar products."  Mot. at 7.  This is incorrect.

**First**, VPV has not identified **any** products beyond the 115 listed in its PICs.  VPV specifically identified 115 model numbers and then threw in "all other substantially similar models," attempting to shift the burden to JDI to identify additional Accused Products.  Ex. A at ¶ 4.  But "[t]his Court has previously rejected the use of catch-all language to satisfy the requirements of 3-1(b)."  *Sol IP, LLC v. AT&T Mobility LLC*, No. 2:18-CV-00526-RWS-RSP, 2020 WL 1911388, at *6 (E.D. Tex. Apr. 20, 2020) (Payne, M.J.).  "[Plaintiff] cannot simply rely on the 'same or similar functionality' language to sweep in additional products that have not been

identified with sufficient specificity in the [PICs]." *Tivo Inc. v. Samsung Elecs. Co.*, No. 2:15-CV-1503-JRG, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016) (Gilstrap, J.). "[C]atch-all language . . . has no effect under the rules and may be disregarded." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG-RSP, 2017 WL 3007464, at *3 (E.D. Tex. July 14, 2017) (Payne, M.J.). Therefore, any discovery beyond the 115 Accused Products listed in the PICs is unjustified.

**Second**, VPV's identification of the 115 Accused Products is itself deficient—VPV identified 115 Accused Products, but **charted** only three "representative" products in its PICs. Ex. A at ¶¶ 4-5. While VPV may rely on representative products, VPV must "include[] an explanation of the technical and functional identity of the products represented." *See Rapid Completions LLC v. Baker Hughes Inc.*, No. 6:15-CV-724, 2016 WL 3407688, at *7 (E.D. Tex. June 21, 2016) (Mitchell, M.J.). VPV falls far short of the requirement that it must "explain and support, as part of its contentions, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between the accused devices . . . relative to the charted products." *Alacritech*, 2017 WL 3007464, at *5. VPV does not: (1) explain which charted product is representative of which uncharted products; (2) identify which patent each uncharted product is alleged to infringe; or (3) identify which specific claims each uncharted product is alleged to infringe. Ex. A at ¶¶ 6-7.

Despite these clear deficiencies, JDI has nevertheless provided discovery on each of the 115 Accused Products for which JDI had sales in the six years preceding the filing of these actions. JDI searched for each of the 115 products, and has already produced a spreadsheet describing these sales. Ex. A at ¶¶ 8-10. To the extent VPV is attempting to seek discovery on products that have not been sold and will not be sold during the relevant time period—and thus cannot be the basis for an infringement claim—this attempt should be rejected.

US 7124619

**II.     VPV Failed to Confer Regarding the Source Code Production and JDI has Already Produced the Requested Information.**

JDI made its GDS files available for inspection on March 11; VPV chose not to inspect those files where they were available, at counsel's office in Dallas, which is nearly across the street from VPV's counsel's office in Dallas.  Ex. A at ¶ 13-14.  On April 29, VPV requested that JDI bring its Source Code Production to VPV's counsel's office instead; JDI accepted the following day.  *Id.* at ¶¶ 15-16.  VPV spent just over three hours reviewing the files.  *Id.* at ¶ 16.  On May 11, VPV outlined alleged deficiencies in the Source Code Production, which JDI immediately began investigating.  *Id.* at ¶ 17.  On May 19, VPV announced its intention to file a motion to compel on May 22.  *Id.* at ¶ 18.  On May 20, JDI requested a meet and confer pursuant to the Discovery Order, but on May 22 VPV denied the request and filed this Motion.  *Id.* at ¶¶ 19-20.  VPV thus failed to confer with JDI as required by the Discovery Order and Local Rule CV-7(h), and JDI respectfully submits that the Court should deny the Motion's requests on this basis alone.

Had VPV properly conferred, JDI could have explained its investigation that: (1) one of the GDS files had apparently been corrupted during transfer; (2) two relevant GDS files had been inadvertently omitted; and (3) five GDS files were missing some information describing additional structure.  Ex. A at ¶ 22.  These issues, which affected only a minority of the overall Source Code Production, have now been rectified and the corrected files have been made available to VPV.  *Id.* at ¶ 22-23.  JDI has also made available the requested "layer definition" information, some of which does not exist in the ordinary course but had to be created to accommodate VPV's request.  *Id.* at ¶ 23.  JDI has further provided a chart correlating the GDS files and layer information to the Accused Products by model number.[1]  *Id.*  JDI respectfully submits that VPV's Motion on this

---

[1] VPV's Interrogatory No. 23, served contemporaneously with the Motion on May 22, requests essentially this same information.  JDI's response is due June 22.  Ex. A at ¶ 21.

4

US 7124619

point is therefore moot, and should be denied.

### III. VPV's Complaints Regarding JDI's Production Ignore Documents Already Produced and JDI's Commitment to Continue Producing Relevant Documents.

VPV's Motion reveals that VPV has not actually reviewed much of JDI's prior production. For example, VPV complains that JDI has not produced "bill of materials," but months ago JDI produced dozens of such bill of materials, readily identified by the "BOM" in each filename. Ex. A at ¶ 25. As another example, VPV seeks in its Motion process flows and specifications; JDI produced over 400 documents describing process flows and specifications for the Accused Products before this Motion was filed, but VPV did not even attempt to view these documents until after it filed this Motion. *Id.* at ¶¶ 26-28.

    A.    <u>Technical Documents (Categories 1 - 3)</u>

JDI's technical production in this case includes hundreds of documents, including the over 400 produced on May 22 regarding process flows and technical specifications for the Accused Products. Ex. A at ¶ 26. As described further below, JDI is preparing supplemental interrogatory responses to more specifically identify how these documents correlate to the technical categories on a per-Accused Product basis, and can commit to completing this effort by June 30.

    B.    <u>Sales, Business Plans, Forecasts, and Projections (Categories 4 & 5)</u>

VPV asserts that JDI has "failed to produce" documents relating to JDI's sales information for the Accused Products. Mot. at 5. Again, this shows that VPV has not reviewed the material it has from JDI. The reality is that JDI has produced and identified in interrogatory responses a spreadsheet that systematically details every JDI sale of every Accused Product that has occurred from for more than six years prior to the filing of this case. *Id.* at ¶ 10. This spreadsheet is incredibly comprehensive, with over 10,000 rows and 100 columns of detailed sales information. *Id.* at ¶ 11. On April 30, JDI again identified this document to VPV, as it would likely obviate

many of VPV's other requests, and asked that VPV review the spreadsheet to identify any missing categories of information. *Id.* at ¶ 12. VPV has apparently chosen not to do so. *Id.* at ¶ 12. Once VPV has reviewed the spreadsheet, if VPV believes in good faith that additional sales information is needed for its case, JDI remains willing to discuss any specific follow up requests.

        C.      <u>Licenses Relating to the Accused Products (Category 6)</u>

JDI has not refused to produce relevant licenses, and has in fact produced numerous relevant licenses since the filing of the Motion. Ex. A at ¶ 29. As VPV knows from prior conversations, the relevant licenses are subject to confidentiality obligations, and JDI was in the process of working through the necessary consents with the counterparties. *Id.*

        D.      <u>Documents With Customers, Distributors, and Retailers (Category 7)</u>

VPV claims that JDI has "failed to produce" documents exchanged with customers, distributors, and retailers of the Accused Products. Mot. at 5-6. Again, not true. JDI has produced agreements with JDI's exclusive distributor in the Americas, non-party JDI Display America, Inc. ("JDIDA"). Ex. A at ¶ 30. Both JDI and JDIDA have produced agreements describing the distributor relationship, and JDIDA produced documents regarding its sales of relevant Accused Products. *Id.* at ¶ 30-31. VPV deposed JDIDA and elicited testimony regarding those agreements, sales of the Accused Products in the United States, and the process by which JDI's products are sold into the United States. *Id.* at ¶ 32. Further, JDI's collection of documents responsive to these requests is ongoing and JDI intends to produce these on a rolling basis.

**IV.    VPV Improperly Demands Narrative Responses, and JDI Already Agreed to Amend its Responses to Provide the Additional "Guidance" Requested.**

VPV's complaints regarding JDI's interrogatory responses are misleading and premature. JDI has either already provided the information requested or committed to supplemental responses.

With respect to Interrogatory No 3, VPV misleadingly complains that JDI cites a "single

document" to identify "all relevant JDI TFT-LCD products." Mot. at 6. The "single document" referred to by VPV is in fact the spreadsheet that systematically details every JDI sale of every Accused Product that occurred from April 1, 2013 to year-end 2019,[2] including the model number of the Accused Product sold. Ex. A at ¶ 10. It has over a million cells of information and clearly identifies by model number each of the Accused Products sold during the relevant damages period and thus every "relevant JDI TFT-LCD product[]" at issue in these cases. *Id.* at ¶¶ 10-11. JDI's response further describes which of the 115 Accused Products were **not** sold by JDI during the relevant damages period. It is unclear what more "narrative" VPV requires.

With respect to Interrogatory Nos. 6 and 18-20, VPV complains that JDI relied on Rule 33(d) to answer questions regarding "the design, structure, layout, operation, method of manufacture, manufacturing process, and functionality of each Accused Product" as well as "the substantive differences between these products." Mot. at 6. These categories of information are already described in the documents JDI has produced; requiring an additional narrative summary of these documents for each of the four interrogatories for each of the dozens of Accused Products would result in more than 300 individual summaries. Such an effort would be overly burdensome, not proportional to the needs of the case, and of little utility. JDI respectfully submits that reference to produced documents under Rule 33(d) is a sufficient response to such interrogatories. To the extent VPV seeks additional narrative correlating each Accused Product to the various categories of technical documents, JDI had already informed VPV that JDI was working to provide supplemental responses to this effect, and JDI can commit to complete this effort by June 30.

For the foregoing reasons, JDI respectfully requests the Court deny VPV's Motion.

---

[2] JDI is in the process of gathering 2020 sales information and will produce as soon as it is available. Ex. A at ¶ 10.

Dated: June 8, 2020                             Respectfully submitted,

/s/ *Hilary L. Preston*
Hilary L. Preston
Texas State Bar No. 24062946
Erik Shallman
Texas State Bar No. 24113474
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, TX  78746
Telephone:  (512) 542-8400
Facsimile:  (512) 542-8612
Email:  hpreston@velaw.com
Email:  eshallman@velaw.com

Eric J. Klein
Texas State Bar No. 24041258
Lithaw "Howard" Lim
Texas State Bar No. 24092701
Jeffrey R. Swigart
Texas Star Bar No. 24102553
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX  75201
Telephone:  (214) 220-7700
Facsimile:  (214) 220-7716
Email:  eklein@velaw.com
Email:  hlim@velaw.com
Email:  jswigart@velaw.com

Abigail Lubow (*Pro Hac Vice*)
California State Bar No. 314396
VINSON & ELKINS L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA  94105
Telephone:  (415) 979-6963
Facsimile:  (415) 358-5770
Email:  alubow@velaw.com

US 7124619

Sean P. Belding
Texas Bar No. 24109634
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Telephone:  (713) 758-2154
Facsimile:   (713) 615-5010
Email:  sbelding@velaw.com

**COUNSEL FOR DEFENDANT
JAPAN DISPLAY INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 8, 2020, the foregoing document was electronically filed in compliance with Local Rule CV-5(a) and was served on all counsel of record who have consented to electronic service, per Local Rule CV-5(a)(3).

*/s/ Hilary L. Preston*
Hilary L. Preston

9